Ronald L.M. Goldman (Pro Hac Vice Pending)
Diane Marger Moore (Pro Hac Vice Pending)
BAUM HEDLUND ARISTEI GOLDMAN PC
10940 Wilshire Blvd., 17th Floor
Los Angeles, California 90024
Tel: (310) 207-3233
rgoldman@baumhedlundlaw.com
dmargermoore@baumhedlundlaw.com

Nicholas U. Frandsen (Utah Bar No. 12512)
Parsons Behle & Latimer
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Tel: (801) 532.1234
nfrandsen@parsonsbehle.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | | |
|---|---|---|
| TAMMY SUE SPEARS and ROBERT G. SPEARS, | : | Case No. 2:20-cv-00367-TC |
| | : | |
| | : | **JURY DEMANDED** |
| Plaintiffs, | : | |
| v. | : | **COMPLAINT BY PLAINTIFFS** |
| | : | |
| AMERICAN AIRLINES GROUP, INC. and CHEAPOAIR, INC. | : | District Judge: Tena Campbell |
| | : | |
| | : | |
| Defendants. | : | |

*Spears v. American Airlines and CheapOAir*
*Complaint and Demand for Trial by Jury*

1

Plaintiffs Tammy Sue Spears and Robert G. Spears, by and through undersigned counsel, plead and allege as follows:

## PARTIES

1.  Plaintiff Tammy Sue Spears (hereinafter referred to as "TS") is a resident of Jerome, Idaho.

2.  Plaintiff Robert G. Spears (hereinafter referred to as "RS") is a resident of Jerome, Idaho.

3.  Defendant American Airlines Group, Inc. (hereinafter American or American Airlines) is a Texas corporation registered in the State of Utah and licensed to do business, and doing business, under the laws of the State of Utah.

4.  Defendant CheapOAir, Inc. is a subsidiary of Fareportal, Inc. It is a New York corporation providing internet airfare purchases in the State of Utah and elsewhere.

## JURISDICTION AND VENUE

5.  This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (a)(1) because the parties are citizens of different states and the amount in controversy is in excess of $75,000.

6.  Venue is proper in this court pursuant to 28 U.S.C. § 1391(a) and (c).

*Spears v. American Airlines and CheapOAir*
*Complaint and Demand for Trial by Jury*
2
PBL\4843-9126-0096.v1-6/12/20

## ALLEGATIONS RELEVANT TO ALL COUNTS

7.  Plaintiff Tammy Sue Spears is, and was at all relevant times, physically disabled as a result of an amputation of her left leg from the knee down.  She is also legally blind.

8.  As a result of her physical disability, TS is, and was at all relevant times, confined to a wheelchair and unable to ambulate on her own.  She has very limited vision.

9.   TS's amputation was performed on June 25, 2018 with follow up surgery on September 21, 2018.  TS did not have a prosthesis making her disablement plainly visible.

10. At all times herein relevant, TS intended to travel from her home in Jerome, Idaho to Richmond, Virginia to visit her sibling.  In order to ensure safe air travel, TS, RS, and their son communicated with American before and after purchasing tickets for the planned trip. This was to be TS's first airplane flight since she suffered her leg amputation.

11.  Prior to the family purchasing tickets from CheapOAir, on or before June 26, 2019, American advised the family as to the best airport from which to depart: Salt Lake City, Utah.

12.  On or before June 26, 2019, American advised TS, RS, and their son that only certain aircraft carried in-flight aisle (wheel) chairs and recommended those flights between Salt Lake City and Charlotte, North Carolina that would accommodate her disability.

13.  On or about June 26, 2019, TS purchased her ticket online through CheapOAir's online travel site for travel from Salt Lake City, Utah to Richmond, Virginia.

14.  TS's tickets were booked on American Airlines Flight 2905 from Salt Lake City, Utah, to Charlotte, North Carolina where she would connect to American Airlines Flight 5380 bound for Richmond, Virginia.  Her flights were scheduled for departure on August 10, 2019.

15.  On or about August 6, 2019, plaintiffs contacted American Airlines and notified it of TS's need for an onboard aisle chair, as well as wheelchair accommodations at the airports through which she was traveling.

16.  On or about August 6, 2019, plaintiffs also notified TSA of TS's disability and inability to walk.

17. When TS arrived at Salt Lake City International Airport, on or about August 10, 2019, TSA provided TS with all needed assistance to help her to her

*Spears v. American Airlines and CheapOAir*
*Complaint and Demand for Trial by Jury*
4
PBL\4843-9126-0096.v1-6/12/20

departure gate prior to her departure.  TS arrived and presented to the American Airlines gate agent more than an hour before her flight's scheduled departure time.

18.  On or about August 10, 2019, American Airlines Flight 2905 was operated on an Airbus A321, a plane with 120-180 seats and subject to the Air Carrier Access Act. 49 U.S.C. §§ 40101 *et seq.* See also, 14 C.F.R. §382.65.

19.  The aircraft was owned, operated and under the control and supervision of American Airlines and operated by its employees, agents and servants at the time TS was wheeled to the boarding gate on or about August 10, 2019.

20.  TS arrived at the American Airlines gate in a wheelchair provided by TSA.  She wore clothing that permitted the American Airlines, Salt Lake City, gate agents to see that she had only one leg.  TS did not have a prosthetic on her stub.

21.  TS appeared at the departure gate for Flight 2905, as instructed by American Airlines, more than one hour before flight time.

22.  On or about August 10, 2019, American Airlines provided TS with an aisle chair to board Flight 2905, and she was able use the aisle chair to get seated on the plane, with the assistance of American Airlines' employees and agents, without incident.

23.  Upon information and belief, neither the American Airlines' gate agents nor flight attendants on Flight 2905 confirmed the availability of an aisle chair onboard before permitting TS to board the flight.

24.  On or about August 10, 2019, American Airlines gate agents and flight attendants were aware that the flight time from Salt Lake City to Charlotte, North Carolina, including time taxiing, was approximately four hours.

25.  It was foreseeable to the American Airlines gate agents and flight attendants that a passenger on such a lengthy flight would need to use the lavatory at some time during the flight.

26.  On or about August 10, 2019, defendants, and each of them, negligently, carelessly and recklessly failed to load an aisle wheelchair onto American Airlines Flight 2905 notwithstanding its notice and knowledge that its passenger, Tammy Spears, had one leg amputated and needed to be, and was, boarded with an aisle wheelchair and would foreseeably need the use of an aisle chair during the flight.

27.  About an hour or more into the flight, TS needed to use the lavatory and advised a flight attendant that she required the use of an aisle chair. Upon information and belief, the flight attendant acknowledged the request and left TS to go get the aisle chair.

*Spears v. American Airlines and CheapOAir*
*Complaint and Demand for Trial by Jury*
6
PBL\4843-9126-0096.v1-6/12/20

28.  The flight attendant returned to TS and advised her that there was no aisle chair onboard the aircraft, and that she would have to hold it or get to the lavatory without use of an aisle chair.

29.  TS attempted to comply with the directions of the American Airlines employee, but later informed American's cabin attendants that she required use of the lavatory.  Whereupon, in attempting to get her to the lavatory, the flight attendant and other employees, agents, servants and contractors of American Airlines on the flight, who joined the first responding flight attendant, lifted, dropped, pushed, dragged and injured TS in their efforts to help her out of her seat and to start the process of getting her to the forward lavatory.

30.  In the course of the effort to help TS out of her seat, TS fell to the floor in front of her seat. At or about that time, American Airlines' flight attendants, and other agents, directed TS to hop on her one remaining leg down the aisle. TS, exhausted from the effort to get out of her seat, and aware of her disability, was unable to comply.

31.  During the effort to stand and move, TS became aware that the activity caused passengers on the flight to stare at her and become aware of her disability.

32. After a period of time, with her need to use the lavatory increasingly urgent, TS was directed by American's flight attendants, and other agents, to "scoot" on the floor of the cabin with flight attendants and a passenger, whose help the flight attendants had elicited, pushing and pulling her.

33. Once she reached the forward lavatory, and with many of the passengers focused on her plight, TS was too exhausted to pull herself up from the floor to enter the lavatory, even with help. American's flight attendants and agents, and the aforementioned passenger pushed suitcases or some other hard surfaced containers under TS in order to raise her up.

34. Having reached the lavatory near the cockpit and forward of the first-class cabin, American's cabin attendants and agents, began to disrobe TS in plain view of flight attendants and several of the first-class passengers. TS was too humiliated and exhausted, and her need had become too urgent, to resist. She finally got into the lavatory. American's crew members insisted that TS utilize the lavatory with the door open.

35. Humiliated, injured, exhausted, and defeated, TS advised the crew that she could not get back to her seat.

36.   American's employees and agents devised another scheme to drag TS from the lavatory to her seat. This method involved TS sitting on a flat of some kind and being dragged inch by inch back to her seat.

37.   TS's humiliation and utter pain was so obvious to passengers that one first class passenger offered TS his seat to stop the dragging; on information and belief, he took a coach seat.

38.   As a direct and proximate result of the acts and conduct of defendants, and each of them, TS suffered burns, strains, pain, swelling, bruising and suffering to her leg and foot, stump, arm and derrière each of which were sore, aching, throbbing, and otherwise injured and hurting.

39.   As a direct and proximate result of American's negligent and careless failure to board an aisle chair, and of the consequent injuries, including but not limited to, pushing, lifting, dragging, falling, crawling, scooting, dropping and humiliation, TS's blood pressure and breathing were severely and adversely affected. The aforementioned passenger (enlisted by American Airlines) monitored TS's blood pressure and TS was given supplemental oxygen until the flight landed.

*Spears v. American Airlines and CheapOAir*
*Complaint and Demand for Trial by Jury*
9
PBL\4843-9126-0096.v1-6/12/20

40.  TS remained in the first-class cabin seat for the duration of the lengthy flight of about four hours, experiencing pain, suffering, discomfort, humiliation, and severe emotional distress.

41.  Upon arrival in Charlotte, North Carolina, American's employees and EMTs checked TS's vital signs and then placed her in an aisle chair to deplane and then transferred her to a wheelchair.

42.  Instead of being taken to her departure gate, Tammy Spears was taken to a room controlled by American and interrogated about the incident against her desire.  Only after questioning her, denying fault, and further embarrassing her, did American Airlines' agents allow TS to use restroom facilities and wheel her to her gate for departure on American Airlines Flight 5380.

43.  American Airlines, at all times relevant herein, had full and complete contact information for TS and RS as evidenced by their telephone call to RS before TS's flight landed in Charlotte, North Carolina.

44.  At all times herein relevant, it was reasonably foreseeable that a disabled and wheelchair bound passenger such as plaintiff would need to use the lavatory on a cross-country flight estimated to be aloft for approximately four hours.

PBL\4843-9126-0096.v1-6/12/20

45.    As a direct result of the negligence of American Airlines' employees, agents, and representatives, TS suffered severe and permanent physical, mental, and emotional injuries.

## COUNT I
## NEGLIGENCE (AMERICAN AIRLINES)
## FAILURE TO HAVE ONBOARD AISLE CHAIR

46.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

47.    At all times herein relevant, American Airlines had duties imposed by industry standards, ordinary reasonable care, and the Air Carrier Accessibility Act ("ACAA") to board an onboard aisle chair on its Airbus A321 airplane being operated as Flight 2905 upon which TS was a paying passenger.

48.    As a direct and proximate result of American Airlines' acts, omissions and conduct, TS suffered severe and continuing damages, including but not limited to severe and lasting pain and suffering, physical injuries, humiliation, and severe emotional distress.

*Spears v. American Airlines and CheapOAir*
*Complaint and Demand for Trial by Jury*
11
PBL\4843-9126-0096.v1-6/12/20

## COUNT II
## NEGLIGENCE (AMERICAN AIRLINES)
## FAILURE TO WARN OR DENY BOARDING

49.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

50.  At all times herein relevant, American Airlines had duties imposed by industry standards, and ordinary reasonable care to warn TS that no aisle chair was, or would be, available for her on the Airbus A321 airplane being operated as Flight 2905 on August 10, 2019, before boarding her.

51.  At all times herein relevant, American Airlines had a duty to ensure that its passengers' foreseeable health needs would and could be met during a flight, including the need to use a lavatory on flights with an expected duration of about four hours, block to block.  In the event it could not meet the foreseeable need to use the lavatory, it had a duty to warn the passenger of that fact, or to deny boarding on that flight in the interests of the health and safety of all its passengers, including TS.

52.    At all times herein relevant, defendants, and each of them, with actual knowledge of her disability and need for an aisle wheel chair aboard her aircraft, failed to warn TS that Flight 2905 lacked an aisle wheel chair and/or other

accommodations for her obvious disabilities, and that there would be no means by which TS could get to an onboard lavatory during the flight if the need arose.

53.   At all times herein relevant, defendants, and each of them, boarded TS onto Flight 2905 without her informed consent to take this flight without access to a lavatory during flight.

54.   As a direct and proximate result of the conduct, acts and omissions of defendants, and each of them, TS suffered severe and continuing damages, including but not limited to severe and lasting pain and suffering, physical injuries, humiliation, and severe emotional distress.

**COUNT III**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(AMERICAN AIRLINES)**

55.   Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

56.   American Airlines' outrageous and intolerable conduct of failing to board an aisle chair for and failing to warn TS that the flight would not have an aisle chair available for her during flight, was done with knowledge of the probability that failure to have the aisle chair available to TS would likely lead to substantial

*Spears v. American Airlines and CheapOAir*
*Complaint and Demand for Trial by Jury*
13
PBL\4843-9126-0096.v1-6/12/20

and serious harm, and was done with reckless disregard of the probability of causing Spears severe emotional injury, distress, humiliation and physical harm.

57.   At all times relevant hereto, American Airlines had the ability to deny boarding to TS for her safety and to protect her from harm, when they knew or should have known that allowing her to board subjected her to the harms described herein.

58.   As a direct and proximate cause of American Airlines' infliction of severe emotional distress on TS she has suffered, *inter alia*, nightmares, fear of flying, anxiety, depression, and other physical and emotional injuries, according to proof at trial.

<u>**COUNT IV**</u>
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**(AMERICAN AIRLINES)**

59.   Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

60.   At all times herein relevant, American Airlines negligently, carelessly, and recklessly engaged in each of the conduct, acts and omissions, as hereinbefore alleged, and knew or should have known that such conduct involved an unreasonable risk of causing the injuries and harms as alleged in this complaint.

*Spears v. American Airlines and CheapOAir*
*Complaint and Demand for Trial by Jury*
14
PBL\4843-9126-0096.v1-6/12/20

61.    At all times relevant, American Airlines should, in the exercise of ordinary care, have realized that its conduct could cause the sort of emotional distress that foreseeably would cause severe and lasting emotional and psychic distress leading to illness or other bodily harm.

62.   As a result of American Airlines' negligent infliction of emotional distress on TS she has suffered, and continues to suffer, severe and lasting emotional distress, and nightmares, a complete fear of flying, anxiety, depression, and other severe physical and emotional injuries, according to proof at trial.

## COUNT V
## NEGLIGENCE (CHEAPOAIR)

63.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

64.   CheapOAir is and was at all relevant times an online discount airline ticket seller and a subsidiary of Fareportal who advertises:

> Fareportal's unique hybrid business model bridges the gap between an online travel agency and a traditional travel agency by providing a convenient online booking capability as well as a 24/7 personalized trip booking experience arranged by hundreds of trained and certified travel agents in

*Spears v. American Airlines and CheapOAir*
*Complaint and Demand for Trial by Jury*
15

multiple countries and in multiple languages. By leveraging company owned and operated contact centers located worldwide, we are able to deliver one of the highest levels of customer service and support in the air travel business.

65.   CheapOAir and its parent company knew or should have known that disabled passengers utilize their website to purchase airline tickets for travel across the United States and elsewhere.

66.   At all times herein relevant, CheapOAir had a duty to know the rules and regulations regarding the provision of services to disabled passengers, including passengers that could not board an airplane without the assistance of an aisle wheelchair.

67.   At all times herein relevant, CheapOAir had a duty to inquire of its customers whether they would require any special assistance, or had any special needs, including assistance boarding, seating, and using in-flight facilities.

68.   At all times herein mentioned, CheapOAir had a duty to inform its customers of any and all requirements for disabled passenger boarding.

69.   CheapOAir had a duty to inform the airline about purchasers, including TS's, special needs.

*Spears v. American Airlines and CheapOAir*
*Complaint and Demand for Trial by Jury*

PBL\4843-9126-0096.v1-6/12/20

70.    Upon learning that a customer had a physical disability, including a need for an aisle chair to be onboard a customer's flight, CheapOAir's duty was to either give notice to the airline or inform its customer how and when to notify the airline for which the passenger had just purchased a ticket, or to notify both the airline and the passenger of its customer's special needs.

71.   At the time plaintiff purchased her tickets from CheapOAir as aforesaid, it failed to inquire whether TS had special needs that required assistance to board and during flight

72.   At all times herein relevant, defendant CheapOAir negligently, carelessly and recklessly, failed to make inquiry of plaintiff or plaintiff's husband or son whether she had any special needs, or need for wheelchair assistance at the time plaintiff purchased her tickets as aforesaid, failed to inform plaintiff of her need to contact the airline and explain her special needs, and failed to inform plaintiff of her need to contact the airline and arrange for an aisle chair to be boarded with her on Flight AA2905, nor did it give her any information about how and when to notify the airline of her special needs.

73.   At all times herein relevant, defendant CheapOAir negligently, carelessly, and recklessly failed to advise American Airlines of TS's significant disabilities or

*Spears v. American Airlines and CheapOAir*
*Complaint and Demand for Trial by Jury*
17
PBL\4843-9126-0096.v1-6/12/20

arrange special and required services for her, including the need for an on-board aisle wheelchair.

74.   In the exercise of reasonable care, CheapOAir knew or should have known that without forewarning, American Airlines could fail to have an onboard aisle chair for TS.

75.   As a direct and proximate result of CheapOAir's negligence and carelessness, no aisle wheelchair was boarded with plaintiff on American Airlines Flight 2905, all to plaintiffs' damage as herein alleged.

## COUNT VI

## LOSS OF CONSORTIUM (ALL DEFENDANTS)

76.     Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

77.   TS and RS are, and at all times herein relevant were, husband and wife.

78.   As a direct and proximate result of the acts and conduct of defendants, and each of them, and the consequent serious injuries caused to TS, the marital relationship between TS and RS has suffered, and continues to suffer serious and harmful physical, mental and emotional injury, distress and other harm, according to proof at trial.

*Spears v. American Airlines and CheapOAir*
*Complaint and Demand for Trial by Jury*
18
PBL\4843-9126-0096.v1-6/12/20

79.    RS has been required to perform substantially all the services that previously had been performed by TS, and in addition has had to engage in extraordinary efforts to assist TS in her health care and daily living needs.

80.    As a direct and proximate result of acts and conduct of defendants, and each of them, and the consequent injuries suffered by TS as alleged herein, RS has lost the benefits of TS's services, marital relations, and has suffered a serious and lasting loss of consortium.

WHEREFORE, Plaintiffs pray for judgment against defendants, and each of them, as follows:

A.    Upon the First Cause of Action, for general and special damages in an amount to be proven at trial, but in an amount in excess of $75,000;

B.    Upon the Second Cause of Action, for general and special damages in an amount to be proven at trial, but in an amount in excess of $75,000;

C.    Upon the Third Cause of Action, for general and special damages in an amount to be proven at trial, but in an amount in excess of $75,000;

D.    Upon the Fourth Cause of Action, for general and special damages in an amount to be proven at trial, but in an amount in excess of $75,000;

E.  Upon the Fifth Cause of Action, for general and special damages in an amount to be proven at trial, but in an amount in excess of $75,000;

F.  Upon the Sixth Cause of Action, for general and special damages in an amount to be proven at trial, but in an amount in excess of $75,000;

G.   For interest on special damages as provided by Utah Code § 78B-5-824;

H.   For costs of suit: and

I.   For such other and further relief as the court deems just and proper.

Ronald L.M. Goldman
(*Pro Hac Vice* Pending)
Diane Marger Moore
(*Pro Hac Vice* Pending)
BAUM HEDLUND ARISTEI GOLDMAN PC
10940 Wilshire Blvd., 17th Floor
Los Angeles, California 90024
Tel: (310) 207-3233
rgoldman@baumhedlundlaw.com
dmargermoore@baumhedlundlaw.com

Nicholas U. Frandsen
Nicholas U. Frandsen (Utah Bar No. 12512)
Parsons Behle & Latimer
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Tel: (801) 532.1234
nfrandsen@parsonsbehle.com

Attorneys for Plaintiffs

*Spears v. American Airlines and CheapOAir*
*Complaint and Demand for Trial by Jury*

## **JURY DEMAND**

Plaintiffs hereby demand trial by jury on all issues so triable.

Dated:  June 15, 2020       Nicholas U. Frandsen
Nicholas U. Frandsen (Utah Bar No. 12512)
Parsons Behle & Latimer
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Tel: (801) 532.1234
nfrandsen@parsonsbehle.com

Ronald L.M. Goldman
(*Pro Hac Vice* Pending)
Diane Marger Moore
(*Pro Hac Vice* Pending)
BAUM HEDLUND ARISTEI GOLDMAN PC
10940 Wilshire Blvd., 17th Floor
Los Angeles, California 90024
Tel: (310) 207-3233
rgoldman@baumhedlundlaw.com
dmargermoore@baumhedlundlaw.com

Attorneys for Plaintiffs