IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| TAMMY SUE SPEARS and ROBERT G. SPEARS, <br><br> Plaintiffs, <br><br> vs. <br><br> AMERICAN AIRLINES, INC., and CHEAPOAIR, INC., <br><br> Defendants. | ORDER <br> AND <br> MEMORANDUM DECISION <br><br> Case No. 2:20-cv-367-TC |

In this personal injury case, disabled Plaintiff Tammy Sue Spears, who is now deceased, brought four causes of action against American Airlines for events that occurred during her 2019 flight from Salt Lake City, Utah, to Charlotte, North Carolina. Citing the court's diversity jurisdiction, Mrs. Spears asserted two claims for negligence, a claim for negligent infliction of emotional distress, and a claim for intentional infliction of emotional distress. Her husband Robert Spears filed a claim for loss of consortium.

While the lawsuit was pending, Mrs. Spears passed away for reasons unrelated to events alleged in her complaint. Mr. Spears, who is now the representative of Mrs. Spears' estate, asks the court to substitute him for Mrs. Spears so he may continue to litigate her claims against American Airlines. For the reasons set forth below, the court grants his motion.

# BACKGROUND[1]

Mrs. Spears was blind, had an amputated leg (with no prosthesis), and was confined to a wheelchair. In 2019, Mrs. Spears, who lived in Jerome, Idaho, with her husband, decided to visit her sibling in Richmond, Virginia. She had not taken a flight since the amputation in 2018.

Because Mrs. Spears was wheelchair-bound, she, along with her son and her husband, communicated with American Airlines to determine the best way to ensure a safe and comfortable trip. Airline employees advised the family that she would be better off flying out of Salt Lake City, Utah, where planes carry in-flight aisle wheelchairs and could accommodate her disability. Following American Airlines' advice, she purchased a ticket from Salt Lake City to Charlotte, where she would connect to a different American Airlines flight bound for Richmond, Virginia. She bought her ticket through the website of CheapOAir (a former defendant in this case).[2] Before Mrs. Spears traveled to Salt Lake City, Plaintiffs notified American Airlines that she needed an onboard wheelchair (referred to as an "aisle chair").

When Mrs. Spears arrived at the Salt Lake City International Airport on the day of her flight, TSA employees wheeled her to the American Airlines gate. She arrived more than an hour before the flight's departure time. American Airlines employees used an aisle chair to help Mrs. Spears board the plane. After she took her seat, they apparently removed the aisle chair from the airplane despite "notice and knowledge" that Mrs. Spears "would foreseeably need the

---

[1] The court takes the stated facts directly from the Complaint (ECF No. 2) and assumes they are true for purposes of this order.
[2] Although the Plaintiffs' complaint named CheapOAir as a defendant, Plaintiffs dismissed their claims against the company without prejudice in October 2020.

use of an aisle chair during flight." (Compl. ¶ 26.) According to the Complaint, American Airlines employees also failed to confirm before take-off that an aisle chair was on the plane.

About an hour into the flight, Mrs. Spears needed to use the lavatory and asked the flight attendant for the aisle chair. When the flight attendant learned the plane did not have an aisle chair, she told Mrs. Spears to either "hold it" (id. ¶ 28), or make her way to the lavatory without use of the aisle chair. Unable to wait, Mrs. Spears asked for help getting to the lavatory. American Airlines employees tried to help, but instead "lifted, dropped, pushed, dragged and injured" Mrs. Spears. (Id. ¶ 29.) After a continued struggle, which involved other humiliating events, she was able to use the lavatory. But she was not able to get back to her seat without assistance. When American Airlines employees were about to carry out another ill-conceived way to move her, a nearby passenger offered his seat to her. After those in-flight events, her blood pressure was elevated and she needed supplemental oxygen until the flight landed in North Carolina.

## **ANALYSIS**

Citing to Federal Rule of Civil Procedure 25, Mr. Spears asks the court to substitute him (as the estate's personal representative) for Mrs. Spears. The Rule allows for substitution if a party dies and the death does not extinguish the claim. Fed. R. Civ. P. 25(a)(1).

American Airlines opposes the motion, asserting that when Mrs. Spears died, all of the claims (including Mr. Spears' loss-of-consortium claim) were extinguished. Based on that, American Airlines moves the court to dismiss the entire case.

To determine whether a party's death extinguished common law tort claims such as Plaintiffs', the court must look to state law. The analysis has two elements. The court first asks

whether the claim was "abated."  If the answer is yes, the court must determine whether state law "revives" the claim.

In this diversity jurisdiction case, the parties dispute whether Utah law or Idaho law applies, because the answer to that question dictates the outcome.  If Utah law applies, the court may grant Mr. Spears' motion.  If, on the other hand, Idaho provides the rule of law, American Airlines prevails.

Under common law, a tort cause of action for personal injuries abates (or, more simply stated, ends) upon the party's death.  See, e.g., In re: Estate of Cornell v. Johnson, 367 P.3d 173, 176 (Idaho 2016); Gressman v. State, 323 P.3d 998, 1001 (Utah 2013).  But a state may "revive" the claim through statute.  Utah has a revival statute (Utah Code § 78B-3-107), but Idaho does not.  So if Utah law applies, Mr. Spears has the right to prosecute Mrs. Spears' tort claims as well as his own claim.  If Idaho law applies, as American Airlines argues, he may not revive his wife's claims.  That, says American Airlines, means the court should dismiss the entire case, including Mr. Spears' own claim, which is derivative of his wife's claims.

**The Joy Case**

Typically, the court applies a choice-of-law analysis to resolve a conflict-of-law question.  But Mr. Spears asserts the 1899 United States Supreme Court decision in Baltimore & O.R. Co. v. Joy, 173 U.S. 226 (1899), requires application of the forum law regardless of whether a conflict exists between the law of two related states.

In Joy, the plaintiff suffered injuries while on a train ride that originated in Ohio and ended when the train crashed in Indiana.  After the plaintiff filed his complaint in Ohio state court, the defendant removed the matter to federal district court based on diversity jurisdiction. While the lawsuit was pending, the plaintiff died.

Just as the court is doing here, the Court in Joy addressed an estate representative's right to substitute itself for the deceased plaintiff in a personal injury case. There, Ohio allowed for revival of the claim but Indiana did not. The Court held the plaintiff's death did not extinguish the claim. According to the Court, the defendant's removal of the case to federal court did not affect the estate administrator's right to revive the claim. The Court reasoned that "the right to revive attached under the local law when [plaintiff] brought his action in the state court. It was a right of substantial value, and became inseparably connected with the cause of action so far as the laws of Ohio were concerned." Joy, 173 U.S. at 228. Also underlying the Court's decision was its conclusion that the right to revive the action was not affected by the fact that plaintiff sustained injuries in Indiana. The Court stated the action was "transitory," the jurisdiction of the Ohio court was not in doubt, and the "question of the revivor of actions brought in the courts of Ohio for personal injuries is governed by the laws of that state, rather than by the law of the state in which the injuries occurred." Id. at 231. The Court did not analyze or provide citation in support of those statements, instead noting that it was "scarcely necessary" to state such obvious conclusions.

Putting aside the case's age, the court is not convinced that Joy supports Plaintiff's position. The case's procedural posture was different. The Court emphasized that the Ohio court had original jurisdiction over the case and that the act of filing in Ohio immediately conferred the right to revive under Ohio law. In contrast, Plaintiffs here chose a federal court as their venue, where no state law definitively applied when they filed suit.

Rather than delve further into the 1899 case and federal courts' subsequent treatment of the issue over the last 121 years, the court declines to determine conclusively whether Joy

5

dictates the result advocated by Plaintiff (that Utah law applies). That analysis is not necessary because the court's choice-of-law analysis reaches the same conclusion.

**Choice of Law**

To resolve a conflict-of-law issue in a diversity case, the court applies the choice-of-law principles adopted by the forum, in this case Utah. Accordingly, the court analyzes the issue under Utah's "most significant relationship" test. Rocky Mountain Helicopters, Inc. v. Bell Helicopter Textron, 24 F.3d 125, 128 (10th Cir. 1994). That test requires consideration of four factors: "(1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered." Id.

The first factor does not weigh in favor of Utah or Idaho. Mrs. Spears alleges that she was injured while the plane was in the air.[3] Under this factor, there is no definitive link to a particular state.

As for the second factor (the place where the conduct causing the injury occurred), Mr. Spears argues the Complaint's allegations favor Utah. The court agrees. Mrs. Spears, in one of her two negligence claims, asserts that American Airlines was negligent for failure to confirm before departure that the plane was equipped with an aisle chair, and if it was not, to load one onto the plane in Salt Lake City. In her other negligence cause of action, she alleges that American Airlines is liable for failing to warn her at the gate that no aisle chair would be available on the plane and that she would have no means to move about the cabin during the long

---

[3] Although she does point to events that occurred after the flight landed in North Carolina, those are a very small part of her complaint.

flight. These acts (or omissions) occurred on the ground in Utah. All other actions giving rise to her alleged injuries occurred mid-flight. Accordingly, the court finds the circumstances favor application of Utah law.

Concerning the third factor, the parties' citizenship does not weigh in favor of either state. Although Plaintiffs are residents of Idaho, American Airlines is an international airline based in Texas that has flights to and from many states, including Utah and Idaho.

The fourth factor, like the second factor, weighs in favor of Utah. The parties had a finite relationship that arose out of Mrs. Spears' travel from Salt Lake City, Utah, to Charlotte, North Carolina. The beginning of their association arose solely through discussions about travel details. Before the Spears made the reservation, they communicated with employees of American Airlines, who suggested that Mrs. Spears begin her plane ride at the Salt Lake City International Airport where she could fly on an aircraft equipped with the special in-flight aisle chair. Following that advice, the Spears reserved a seat on a flight originating in Salt Lake City and bought the ticket online through CheapOAir's website. The Complaint does not identify the mode of communication between the parties, but with today's widespread use of the telephone and the Internet, it is highly likely that most, if not all, of those communications were interstate and not in-person.

Still, American Airlines notes that Plaintiffs, as residents of Idaho, likely made the flight arrangements from their home in Idaho. Mrs. Spears also began her travels in Idaho. But she specifically traveled to Utah at the suggestion of American Airlines employees. The remaining, and most material, allegations focus on actions that occurred after Mrs. Spears arrived at the Salt Lake City International Airport, including preparation of the plane for flight, boarding, and in-flight events. Idaho had no relevant connection to those events.

7

The court finds that, on balance, Utah has the most significant relationship to the case, so Utah's revival statute applies. Because that statute expressly allows Mr. Spears to represent Mrs. Spears' estate in the lawsuit, Mrs. Spears' claims are not extinguished. Having satisfied all of the requirements of Federal Rule of Civil Procedure 25(a)(1), Mr. Spears is entitled to substitution.

**ORDER**

For the foregoing reasons, the court GRANTS Plaintiff's Motion to Substitute Personal Representative of Estate for Deceased Plaintiff (ECF No. 42).

DATED this 7th day of July, 2021.

BY THE COURT:

*Tena Campbell*
TENA CAMPBELL
U.S. District Court Judge